Kristin A. Zilberstein, Esq. (200041)
Jennifer R. Bergh, Esq., (305219)
LAW OFFICES OF MICHELLE GHIDOTTI
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tel: (949) 427-2010
Fax: (949) 427-2732
kzilberstein@ghidottilaw.com

Attorneys for Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA-SANTA ANA DIVISION

| | |
|---|---|
| In Re:<br><br>GILDA NOEMI SANCHEZ<br>CESAR JACOBO PEREZ,<br><br>Debtor. | CASE NO.: 8:17-bk-14446-CB<br><br>CHAPTER 13<br><br>**OPPOSITION TO MOTION TO AVOID LIEN**<br><br>DATE: 3/8/2018<br>TIME: 1:30 pm<br>CTRM: 5D<br>PLACE: 411 W. Fourth St., Santa Ana, CA 92701<br><br>Honorable Catherine E. Bauer |

Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1, its successors and/or assignees, (hereinafter "Creditor"), hereby opposes Debtors' Motion to Avoid Junior Lien.

**FACTUAL/PROCEDURAL BACKGROUND**

On November 12, 2017, Debtors filed the current Chapter 13 bankruptcy case. Debtors seek to avoid Creditor's lien on the grounds that the value of the property located at 110 S. Jeanine Way, Anaheim, CA 92806 ("the property") does not have sufficient equity to support Creditor's claim. Pursuant to the moving papers, the value of the property is $540,000.00 while the amount owed to the first lienholder, Ocwen Loan Servicing, LLC ("Ocwen"), is $544,738.16. The evidence used to support the amount owed to Ocwen is a monthly statement.

**ARGUMENT**

**A.  DEBTORS' EVIDENCE CANNOT BE ADMITED**

In support of the Motion to Value, Debtors attach a declaration. The Declaration states under penalty of perjury that the first lienholder is Select Portfolio Servicing, Inc. See Motion, pg. 10 paragraph 6. However, Exhibit 2 appears to be a monthly statement from Ocwen. Debtors' declaration and motion have not established sufficient foundation, authentication, personal knowledge, or an exception to the hearsay rule to have this document admitted into evidence to support their contention of the amount owed to the first lienholder. See FRE §602, 801, and 901. Thus, the Motion to Value should be denied because Debtors do not have sufficient evidence to support it.

**B.  THE APPRAISAL IS INSUFFICIENT TO SUPPORT THE PURPORTED VALUE**

To support the value of $540,000, Debtors provide an appraisal by Ely Rivara. However, the appraisal does not provide sufficient information to support the purported value. First, Mr. Rivara only provided three comparable properties to determine the value. Generally, appraisers provide five to six comparables. Second, comparable two is not adjusted for the difference in the number of bedrooms while comparables one and three are. Third, comparable three is five months old. Fourth, comparable one and two are two months old. With such a small sampling of comparable properties and the age of the comparables, the appraisal lacks sufficient detail, accurate information, and timely information to provide an accurate valuation. Further, with such a small difference between the appraised value and the amount purportedly owed to the first lienholder more accurate and recent

comparables must be used to ensure the accuracy of the appraisal. With such a great deal at risk for Creditor, it is imperative the appraisal be accurate.

Moreover, the appraiser lists in the appraisal a repair estimate. Mr. Rivara has not been qualified as a general contractor expert who can provide an opinion as to the necessity of the repairs as well as the cost of same. See FRE §701. Because he takes into account the need for repairs as well as the cost of the repairs in determining the value of the property, the appraised value is not accurate or admissible. As such, the Motion to Value should be denied because the appraisal in support of the value is questionable.

### C. THE PORTION OF THE OCWEN LOAN BALANCE THAT IS THE RESULT OF A MODIFICATION IS SUBORDINATE

11 U.S.C. § 506 allows for the valuation or bifurcation of a secured creditor's claim into secured and unsecured portions based on the value of the collateral. *In re Addison Properties Ltd. Partnership*, 185 B.R. 766 (Bankr. N.D. Ill. 1995); *In re Chrapliwy*, 207 B.R. 469 (Bankr. M.D. N.C. 1996); *In re Perkins*, 237 B.R. 658, 34 Bankr. Ct. Dec. (CRR) 1071, 42 Collier Bankr. Cas. 2d (MB) 1224 (Bankr. S.D. Ohio 1999). However, the Supreme Court in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) placed a limit on such power by holding that the anti-modification provisions of 11 U.S.C. § 1322(b)(2), when read in conjunction with 11 U.S.C. § 506, prevent a debtor from seeking to value, bifurcate or avoid liens secured by a debtor's primary residence wherein equity existed to protect such liens. As a result of these provisions, a second position lienholder who holds a security on a debtor's primary residence may not have their lien avoided, valued or stripped unless a showing is made that the second lien is wholly unsecured (See 11 U.S.C. 1322(b)(2) and *Zimmer cv. PSB Lending Corp. (In re Zimmer)* 313 F.3d 1220 (9th Cir. 2002) which states that second position lienholders with a lien secured in a Debtor's primary residence are protected under the anti-modification clauses of the bankruptcy code if they are not wholly unsecured). If **any** portion of the second position lienholder's claim is secured, the protections of 11 U.S.C. §1322(b)(2) apply and the second position lien may not be avoided, stripped or bifurcated under Section 506 or through a debtor's Chapter 13 Plan. *Nobleman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *In re Akram*, 259

B.R. 371(Bkrtcy. C.D. Cal. 2001) and *In re Ives*, 289 B.R. 726, 728 (Bkrtcy.D, Az. 2003) at pg. 729).

In this matter, Creditor has equity because a portion of Ocwen's lien is subordinate to Creditor. While a senior mortgage can generally modify its lien without the permission of a junior lienholder, any modifications that prejudice the rights of a subordinate lienholder must be consented to by the junior lienholder. *Shultis v. Woodstock Land Dev. Assocs.*, 188 A.D.2d 234, 594 N.Y.S.2d 890, 892 (N.Y.App.Div.1993). Failure to obtain a junior lienholder's consent regarding prejudicial terms results in the modification being ineffective as to the junior lienhors and the senior lienor relinquishing to the junior lienors its priority with respect to the modified terms. *Gluskin v. Atlantic Sav. & Loan Ass'n* (1973) 32 Cal. App. 3d 307; *Lennar Northeast Partners v. Buice* (1996) 49 Cal. App. 4th 1576. Courts have found that a senior loan modification is prejudicial in nature if it 1) increases the original loan amount; 2) increases the interest rate; 3) shortens the loan repayment period 4) adds a balloon payment and/or 5) creates any change likely to promote default under the senior lien. *See for e.g. Gulesarian v. Fields*, 218 N.E. 2d 397 (Mass. 1966); *Gluskin v. Atl. Sav. & Loan Ass'n*, 108 Cal. Rptr. 318 (Ct. App. 1973) (senior lender's and borrower's loan modification that reduced the principal amount of the senior loan, increased the loan's interest rate by 3.76%, shortened the loan's maturity to 10 months and added a balloon payment at maturity prejudiced junior lender because it increased borrower's likelihood of defaulting under the senior loan); *Shultis v. Woodstock Land Dev. Assocs.*, 594 N.Y.S.2d 890 (App. Div. 1993) (senior lender's and borrower's loan modification that increased interest rate of loan by 5% was prejudicial to junior lender because it increased the total amount of indebtedness under first mortgage). If a senior lienholder completes a prejudicial loan modification without the consent of the junior lienholder, the amount of the unauthorized modification is considered to be subordinate to the junior lienholder's interest. *See e.g., Shane v. Winter Hill Federal Sav. & Loan Ass'n*, 492 N.E. 2d 92 (Mass. 1986) (senior lender ordered to refund to borrower all payments made by borrower or junior lender to first lender in excess of the interest rate allowed under the first mortgage – 1%); *Shultis v. Woodstock Land Dev. Assocs.*, 594 N.Y.S.2d 890, 893 (App. Div. 1993) (junior mortgage granted priority over senior mortgage to the extent of the amount representing the increased interest due and owing to senior lender as a result of loan modification - approximately $7,200; court refused to grant junior mortgage total priority over

1  senior mortgage, but noted in some circumstances prejudice could be so severe as to justify that

2  remedy); *but see* Citizens & Southern National Bank of South Carolina v. Smith, 284 S.E.2d 770

3  (S.C. 1981) (court reversed priorities of junior and senior lender).

4     Here, Debtors entered a modification with the first lienholder in August 2010.  A true and

5  correct copy of the modification is attached hereto as **Exhibit "A"**.  As discussed above, there are

6  five factors to consider in determining whether a modification is prejudicial.  Applying those factors

7  to this modification, the loan amount is increased.  The interest rate is not increased.  However, the

8  loan repayment period is.  The original maturity date is not change.  As a result, Debtors had a

9  greater amount to pay over the remaining life of the loan.  The end result is a shorter period of time

10  in which to pay a larger loan.  With regard to the fourth factor of a balloon payment, the

11  modification created a balloon payment of $257,976.79.  Because this modification meets the

12  majority of the factors which result in the modified terms being subordinate to the second lien,

13  Creditor is not wholly unsecured.  At this time, Creditor is in the process of preparing an adversary

14  complaint for declaratory relief to resolve these issues.  If the Court is not willing to deny the Motion

15  to Value based upon the issues raised above, Creditor requests that the Motion to Value be continued

   a sufficient amount of time for Creditor to resolve the issues with the first lienholder.

16  ////

17  ////

18  ////

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28

## CONCLUSION

Based on the foregoing, the Motion to Value should be denied. Debtors have not provided sufficient evidence in support of the Motion to Value. The statement from Ocwen is not proper evidence. In addition, the appraisal is not reliable in that it used a very small number of comparables that could have been more recent. Lastly, a portion of the first lien should be subordinate to that of Creditor. If the Court is not willing to deny the Motion to Value, Creditor requests a sufficient continuance to allow the issues with the first lienholder to be resolved.

Dated: February 22, 2018                           Respectfully submitted,

                                                                       LAW OFFICES OF MICHELLE GHIDOTTI

                                                                       /s/ Kristin A. Zilberstein
                                                                       Kristin A. Zilberstein, Esq.
                                                                       Attorney for Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1

# EXHIBIT "A"



**Modification Agreement:
Please sign and return**

# Sign & Return

August 4, 2010

*If you have any questions regarding this offer, please call us toll free at 1-866-659-0046.*

Cesar Jacobo Perez
110 S Jeanine Way
Anaheim, CA 92806-3839

**Product:** IndyMac Mortgage Services Custom Modification
**IndyMac Mortgage Services Loan Number:**
**Investor Loan Number:**
**Property Address:** 110 Jeanine Way, Anaheim, CA 92806

This letter ("Agreement") will confirm your agreement to modify the Note, dated 5/19/2006, and the Security Instrument of the same date, recorded on 06/01/2006 in Book _____, Page(s) _____, or Instrument or Document No. 2006000367 of the Official Records of Orange County, State of California. The Security Instrument encumbers the real and personal property described in the Security Instrument and defined as the "Property," located in Orange County, California, and which currently has the address referenced above. Capitalized terms not otherwise defined herein have the meaning given them in the Note or the Security Instrument.

1. This Agreement is not binding on Note Holder, unless and until Note Holder, or servicing agent, IndyMac Mortgage Services, a division of OneWest Bank, FSB ("IndyMac"), verifies that you qualify for this modification offer. You will promptly provide IndyMac acceptable information to permit verification of your income, and make the payments shown in the payment schedule in paragraph 6 of this Agreement, while IndyMac verifies your information. If you qualify, IndyMac, will sign and return this Agreement to you, and it will be effective on the date it is signed by IndyMac. If you do not make all payments when due while we verify that you qualify, or if you do not qualify, your Note will not be modified. IndyMac will apply any payments you made to the amounts you owe.
2. The unpaid principal balance of your Note as of the date of this Agreement, before modification, is $536,000.00.

3. The Note and the Security Instrument are modified to increase the principal balance of the Note by the amounts of your arrears on the Note of $61,655.51, including past due interest in the amount of $54,402.03, past due Escrow Items totaling $5,575.68 and servicing costs totaling $1,677.80. The new principal amount of the Note is $597,655.51 ("New Principal Balance"). All unpaid late charges have been waived. There are no fees or other charges assessed for the modification.
4. You will pay the New Principal Balance by (a) paying the "Amortized Principal", as shown in paragraph 7 below, by making the monthly payments as shown in paragraph 6 below; (b) paying a "Balloon Payment" as shown in paragraph 8 below; and (c) paying the "Deferred Principal Balance" as shown in paragraph 9 below.
5. We agree that any portion of Escrow Items that we add to the unpaid Principal Balance which creates a surplus in your escrow account will not be secured by the real property described in the Security Instrument, but is included in the Principal Balance that you must repay as provided in this Agreement.
6. The interest rate and monthly payment on your Note is modified as follows:

| Year | New Interest Rate | Interest Rate Change Date | New Monthly Principal & Interest Payment Amount | Estimated Monthly Escrow Payment Amount | New Monthly Payments Begin On | Number of Payments |
|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 8/1/2010 | $1,446.83 | $429.32, May Adjust Periodically | 9/1/2010 | 60 |
| 6 | 3.000% | 8/1/2015 | $1,680.88 | May Adjust Periodically | 9/1/2015 | 12 |
| 7 | 4.000% | 8/1/2016 | $1,927.93 | May Adjust Periodically | 9/1/2016 | 12 |
| 8-26 | 4.500% | 8/1/2017 | $2,055.02 | May Adjust Periodically | 9/1/2017 | 226 |
| One additional balloon payment of $257,976.79 is due on 6/1/2036 for your loan to be paid in full. | | | | | Balloon Payment | 1 |
| One additional payment of $119,878.92, your deferred principal balance, is due on 6/1/2036 for your loan to be paid in full. | | | | | Deferred Principal Balance | 1 |

7. Your monthly payment stated in your Note will change, effective with the payment due on 9/1/2010 (i.e., one month after the effective date of the reduction of your interest rate, as set forth in paragraph 6 above). This monthly payment will consist of principal and interest, and will continue until the next payment or interest rate change date. This monthly payment will change as shown in paragraph 6 above. The Note Holder will send you notice of these changes. This monthly payment will be sufficient to pay $219,799.80 of the principal amount of the Loan at your New Interest Rate ("Amortized Principal"), however, these payments will not be sufficient to pay in full your New Principal Balance.
8. This means that you need to be aware that you will be required to pay in full the Balloon Payment of $257,976.79, upon the earliest of (i) the date you sell the Property, (ii) the date you refinance the Property, or (iii) the Maturity Date.

9. You also will be required to pay in full the Deferred Principal Balance of $119,878.92, upon the earliest of (i) the date you sell the Property, (ii) the date you refinance the Property, or (iii) the Maturity Date. The Note Holder will not charge you interest on this amount.
10. The Maturity Date stated in your Note does not change; the Maturity Date remains 6/1/2036.
11. ☐ If box is checked, a Post-Chapter 7 Rider to Modification Agreement ("Rider") is attached to this Agreement. The Rider is incorporated into this Agreement with the same effect as if the Rider had been included directly into the body of this Agreement.
12. The monthly payments for principal and interest, stated above, do not include required payments for taxes and insurance, which may be substantial. Your monthly requirements for taxes and insurance will change periodically during the term of your mortgage.
13. Your Security Instrument will continue to secure payment and performance of the Note as amended by this Agreement. Except as modified by this Agreement, all terms and provisions of the Note, any Riders, and the Security Instrument remain in full force and effect. The Note and Security Instrument are duly valid, binding agreements, enforceable in accordance with their terms, and are hereby reaffirmed.

Lender:
By: _____  Date: 8/30/10
Richard E. Myatt, AVP

I/We agree to the modification of my/our Loan as described above.

_Cesar Jacobo Perez_  Date: 8-25-10
Cesar Jacobo Perez

_[signature]_  Date: 8/25/10
Witness

_____  Date: _____
Witness

Mortgage Electronic Registration
Systems, Inc. - Nominee for Lender

Notarize on Back

Page 3 of 4

## Notary Section

STATE OF CALIFORNIA            )
                                                   ) ss.:
COUNTY OF ORANGE            )

On the __25th__ day of __August__ in the year __2010__ before me, the undersigned, a Notary Public in and for said State, personally appeared __Cesar Jacobo Perez__ _____,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) (is)(are) subscribed to the within instrument and acknowledged to me that (he)/she/they executed the same in (his)/her/their capacity(ies), and that by (his)/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

__Alida Stanowicz__ (signature)
**Notary Signature**

__Alida Stanowicz__
**Notary Printed Name**

Notary Public; State of __California__
Qualified in the County of __Orange__
My commission expires: __05/01/13__
Official Seal:

[Seal: ALIDA STANOWICZ, COMM. # 1847217, NOTARY PUBLIC-CALIFORNIA, ORANGE COUNTY, COMM. EXP. MAY 1, 2013]

# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of __Orange__

On __08/25/10__ before me, __Alida Stanowicz__,
(Here insert name and title of the officer)

personally appeared __Cesar Jacobo Perez__,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

__Alida Stanowicz__
Signature of Notary Public

(Notary Seal)
ALIDA STANOWICZ
COMM.# 1847217
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
EXP. MAY 1, 2013

---

## ADDITIONAL OPTIONAL INFORMATION

**DESCRIPTION OF THE ATTACHED DOCUMENT**

__loan modification__
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

**CAPACITY CLAIMED BY THE SIGNER**
- ☒ Individual (s)
- ☐ Corporate Officer

   _____
   (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

**INSTRUCTIONS FOR COMPLETING THIS FORM**

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1920 Old Trustin Ave.
Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled (*specify*): _____
_____
<u>OPPOSITION TO MOTION TO AVOID LIEN</u>
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 02/22/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

  Debtor's Counsel: Danny K Agai, dannyagai@gmail.com
  Trustee: Amrane (SA) Cohen (TR), efile@ch13ac.com
  U.S. Trustee: United States Trustee (SA), ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  02/22/2018_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

  Debtor: Gilda Noemi Sanchez, 110 S. Jeanine Way, Anaheim, CA 92806 (U.S. Mail)
  Joint Debtor: Cesar Jacobo Perez, 110 S. Jeanine Way, Anaheim, CA 92806 (U.S. Mail)
  Judge: Honorable Catherine E. Bauer, 411 West Fourth Street, Suite 5165, Santa Ana, CA 92701-4593 (U.S. Mail)

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/22/2018 | Jeremy Romero | /s/ Jeremy Romero |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                              **F 9013-3.1.PROOF.SERVICE**